UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**KJW CAPITAL, LLC.**, a Delaware
limited liability company;
                 **Plaintiff**

v.

**DAVIELLE MYSHAE JACKSON,**
an individual;
**FEMI SECRETS HEALTH INC**, a
Delaware corporation with its principal
place of business in Georgia; and
**FEMI SECRETS LLC**, a Georgia
limited liability company;
                 **Defendants.**

CIVIL ACTION

NO. _____

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff KJW Capital, LLC. ("KJW" or "Plaintiff") who files this Complaint against Davielle Jackson ("Defendant Jackson"), Femi Secrets Health, Inc. ("Defendant FSH"), and Femi Secrets LLC ("Defendant FS"; collectively with Defendant FSH, "Entity Defendants", and collectively with all defendants "Defendants") and would respectfully show the Court as follows:

## I.
## INTRODUCTION AND BACKGROUND

1. This is an action for statutory intentional and willful fraud committed by Defendants against Plaintiff KJW Capital, LLC. KJW is a Delaware corporation based in New Orleans, Louisiana which was fraudulently induced to invest $200,000 into a feminine hygiene and wellness company operated by Defendants in Georgia. In order to accomplish the scheme and artifice to defraud KJW, and in furtherance of Defendants' scheme to defraud KJW after obtaining

an investment from KJW, Defendants utilized instrumentalities of interstate commerce including, but not limited to, Federally Insured Financial Institutions, interstate electronic wires, and the internet to induce KJW and deprive KJW of the benefits promised by Defendants in connection with investment in Defendants FS and FSH.

2. Defendants have accomplished their fraud through the offering of unregistered securities across state lines. The fraud and the prohibited acts and omissions of Defendants are proscribed, governed, and regulated under Section 10(b) of the Exchange Act, which provides and authorizes a private right of action for damages, or, in the alternative, Section 12(a)(2) of the Securities Act for rescission, or, in the alternative, fraudulent inducement for rescission.

3. Defendant Jackson and the Entity Defendants sold securities to Plaintiff in Femi Secrets LLC or Femi Secrets Health, Inc., without a registration statement, across state lines, and through the use of instrumentalities of interstate commerce in violation of Section 5 of the Securities Act.

4. On or about July 24, 2023, KJW was lured to invest, and did ultimately invest, two hundred thousand dollars ($200,000) as an initial tranche of a three million dollar ($3,000,000) proposed investment into Femi Secrets Health, Inc at a proposed share price of $24.69/share. Defendant Jackson and Kenny Welcome, Chief Executive Officer of KJW, executed a non-binding term sheet on or about September 13, 2023, and was provided with an investment deck to review. KJW, in an attempt to formalize the securities transaction, sent a proposed revised Statement of Terms to Defendant Jackson in April 2024, but Defendant Jackson never responded.

5. Both the investment deck and the executed non-binding term sheet identified promises, warranties, and representations that KJW relied upon, and were critical and material to

KJW's decision to invest in the Entity Defendants, as was intended by Defendants' orchestrated scheme to defraud.

6. Ultimately, given the suspicious absence of obligatory disclosures and the lack of communication from Defendants, on or about November 7, 2024, Plaintiff requested that Defendants return the $200,000 in investment funds and rescind the sale of securities. Defendants refused and, using the instrumentalities of interstate commerce, including but not limited to emails generated, upon information and belief, in Georgia and delivered in Louisiana, stated on November 11, 2024 that the money had "already been invested," claimed that altogether new terms regarding the development of an app were in effect, and ultimately maintained that the $200,000 was a "gift, not investment" "[b]ecause you are not investors."

7. Plaintiff requested on or about October 30, 2024, to review the records of Entity Defendants to ascertain the current financial status of the company and the capital invested by Plaintiff along with the status of the fundraising rounds and efforts. Plaintiff was provided no information.

8. Subsequently, Plaintiff, through counsel, demanded on or about January 16, 2025, pursuant to KJW's right to inspect the books and records of the Entity Defendants, the production of certain books, accounts, a schedule of all members/shareholder classes, representations made to potential investors, and financial statements for the Entity Defendants. Again, Defendants, in an effort to hide their interstate unregistered securities scheme to defraud, did not comply with their obligation to supply these documents.

9. As of the filing of this Complaint, the Defendants have refused to provide KJW, a shareholder of Femi Secrets Health, Inc. and/or a member of Femi Secrets LLC, with access to the

books and records of the corporation after a demand and in violation of its rights as a shareholder of a Delaware corporation.

10. Defendants have also wrongfully, as part of their scheme and artifice to defraud KJW, and in violation of its rights, refused to provide KJW with true and complete information regarding the state of the business and financial condition of Femi Secrets LLC. This suit ensues.

## II.
## PARTIES

11. Plaintiff **KJW Capital, LLC**, is a private investment fund and Delaware limited liability company, with its headquarters in New Orleans, Louisiana. Kenny Welcome ("Mr. Welcome") is its Chief Executive Officer.

12. Upon information and belief, Defendant **Davielle Myshae Jackson** is an individual residing in Fulton County, Georgia. Defendant Jackson is associated or affiliated with Femi Secrets Health, Inc. as Chief Executive Officer; Femi Secrets LLC as organizer, member, and upon information and belief, managing member; or authorized agent and representative of the aforementioned corporate defendants.

13. Defendant **Femi Secrets Health, Inc.** is, upon information and belief, a Delaware corporation with its principal place of business at 355 Lenox Rd, Suite 750, Atlanta, GA, 30326. Defendant Jackson represented to Plaintiff that she was its Chief Executive Officer.

14. Defendant **Femi Secrets LLC** is, upon information and belief, a limited liability company organized under the laws of the State of Georgia with its principal place of business at 355 Lenox Rd, Suite 750, Atlanta, GA, 30326. Defendant Jackson is, according to the records of the State of Georgia, its organizer in 2013, with the original name Pretty P Panty LLC, amended on January 16, 2018 to Femi Secrets LLC. Defendant Jackson is listed as a member of the Defendant in its most recent State of Georgia annual registration.

## III.
## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1337, and 1367, 15 U.S.C. § 78aa, and 15 U.S.C. § 77vv. This court has original subject matter jurisdiction over Plaintiff's securities fraud claims under § 1331 and supplemental jurisdiction over Plaintiff's fraudulent inducement claim under § 1337 because this action arises under the Securities Exchange Act; 15 U.S.C. § 78j; Securities and Exchange Commission Rule 10b-5; 17 C.F.R. § 240.10b-5; and the Securities Act, 15 U.S.C. § 77l. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy involves citizens of different states and a subject of a foreign state and exceeds the sum or value of $ 75,000, exclusive of interest and costs.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial portion of the events or omissions giving rise to the claims in this lawsuit occurred in this District.

## IV.
## FACTUAL ALLEGATIONS
### Plaintiff's Investment and Defendants' Misrepresentations

17. KJW is a private investment fund, formed in Delaware and based in New Orleans, Louisiana.

18. The founder and Chief Executive Officer of KJW Capital, Kenny Welcome, is dedicated and committed to "empowering the Black community and fostering generational wealth…"[1] and participates in a wide variety of civic organizations as a board member, contributor, and volunteer, including the "Executive Mentor Council for Son of a Saint, the Urban League of

---

[1] KJW Capital, "Our Team", profile on Kenny Welcome, https://www.kjwcapital.com/our-team, last accessed March 12, 2025.

5

Louisiana, the New Orleans Regional Black Chamber of Commerce, McDonogh 35 Alumni Association, and the Tulane Alumni Association."[2]

19. KJW and Defendant Jackson first met at a J.P. Morgan Chase sponsored event at the Essence Festival in New Orleans, Louisiana in July of 2023.

20. Plaintiff had no preexisting relationship with Defendant Jackson.

21. Defendant Jackson informed Plaintiff that she had an investment opportunity that might interest KJW.

22. Pursuant to same, Defendant Jackson provided KJW an informational deck sheet regarding her company Femi Secrets.

23. The investment opportunity in question was Femi Secrets.

24. KJW believed that Femi Secrets and Defendant Jackson, which proudly self-identify as Black woman founded and operated[3], was an ideal investment for KJW's preferred investment opportunities.

25. Accordingly, Defendant Jackson had KJW execute a Non-Disclosure Agreement "NDA" on August 7, 2023, which allowed KJW the ability to access the investment data room of Femi Secrets.

26. KJW accessed that data room on August 8, 2023, which contained the Femi Secrets marketing deck, financial projections, and other related documents for a potential investor to review and consider.

---

[2] Tulane University, "Kenny Welcome," https://securetu.tulane.edu/s/1586/Alumni/16/interior.aspx?sid=1586&gid=3&pgid=12492, last accessed March 12, 2025.

[3] *See*, for example, Victoria Uwumarogie, "The Leak-Free 'Pretty Panty' is Making Periods Easier – And Protecting Women's Reproductive Health", November 30, 2021, https://www.essence.com/health-and-wellness/chemical-free-period-products/, last accessed March 12, 2025.

6

27. This confidence that Defendants induced was supported by Defendants' provision of a non-binding term sheet.

28. Defendants identified key parts of the offering in this term sheet, including:

   a. That the issuer was "Femi Secrets, a corporation incorporated under the laws of Delaware";

   b. That the sale was of shares of Series A Preferred Stock in the entity;

   c. That the offering amount was up to $10,000,000 in aggregate new capital;

   d. That "Initial closing" was "targeted on or before Jan 9, 2024"; and

   e. That KJW would have certain information rights including unaudited annual financial statements, unaudited quarterly financial statements, and an annual business plan.

29. The bind terms of this term sheet included that Femi Secrets and KJW would work in good faith expeditiously towards a closing.

30. Defendants included what they held out to be the current Series A capitalization table, showing the effect that KJW Capital would have on the overall financial condition of Femi Secrets.

31. The capitalization table indicated that for the $3,000,000 total investment by KJW Capital, KJW Capital would receive 121,504 shares constituting 7.5% ownership of "Femi Secrets" without defining which entity specifically "Femi Secrets" referred to.

32. Mr. Welcome of Plaintiff KJW executed this term sheet on or about September 13, 2023. KJW requested a copy of the executed document from Defendants but Defendants did not, and have not, provided it.

33. As previously noted, Defendants provided KJW with access to the marketing deck describing the opportunity to invest in the Femi Secrets business on August 8, 2023.

34. Of the sixteen-page marketing deck provided to KJW, only single page identified a "Femi Secrets App" targeted at the "$1 Trillion FemTech Market", identifying as items of interest "Data Collecting," "Push Notification Purchase Driver," "Wellness and Health Tracking," "Ovulation Tracking," "Family Planning," and "Women Productivity Tracking (B2B)".

35. The remainder of the marketing deck provided a snapshot of Femi Secrets, offering comparisons to other "fem tech" companies, giving a history of the company, the five patents held by the company, comparisons between Femi Secrets' products and competitors' products, and projected future revenue.

36. The marketing deck emphasized two points: the monthly subscription program, that offered its products to tens of thousands of monthly subscribers and that was projected to grow in revenue and subscriber count over the next several years, and its "hero product," the "Pretty Panty," a patented, leak-proof, disposable, bio-degradable, eco-friendly feminine hygiene product."

37. Between the subscription program and the line of products, including the "hero product," Femi Secrets put forth an image of a robust, subscription-supported, dynamic going concern with a line of manufactured products positively affecting the lives of women in the real world—critical representations that KJW relied upon.

38. In addition to the information contained in the data room and provided by Defendant Jackson, Defendant Jackson also informed KJW that Femi Secrets was doing more in revenue than that depicted in the financials provided, that Femi Secrets had secured a number of

other investors who were NFL athletes, and also that Proctor Gamble desired to acquire Femi Secrets for $250 million.

39. Based upon these oral representations, the materials in the marketing deck, and the term sheet identifying the securities to be sold, KJW wired the sum of two hundred thousand dollars ($200,000) on or about February 20, 2024 from its account to Femi Secrets., with the message to recipient of "KJW CAPITAL FEMI SECRETS Series A Tranche A Deployment."

40. KJW began making a diligent effort to proceed forward with the capital raise efforts as discussed between the parties.

41. On or about April 12, 2024, KJW, in an effort to continue working in good faith with Defendants, provided via email a document entitled "KJW Capital - [Revised] Summary of Terms - Femi Secrets Health, Inc." ("Revised Term Sheet")

42. This Revised Term Sheet was intended to be a follow-up binding agreement clarifying timelines and working toward a final closing and deployment of the remaining $2,800,000 the parties had discussed.

43. In it, Plaintiff KJW identified the $200,000 wired on February 20, 2024 as "Deployment Tranche: A" and estimated, depending on contributed portfolio values, "Q1'2025" for "Deployment Tranche: B" of $2,800,000.

44. Defendants never responded to this email or acknowledged receipt of this document.

45. KJW continued with its efforts to raise the capital pursuant to its agreement to do so, despite the lack of transparency and information which Defendant Jackson failed to provide.

46. Defendant Jackson continued to share information with KJW regarding potential investors that was inaccurate and untruthful, and did so in an effort to induce KJW to continue working with Defendant Jackson and Entity Defendants.

47. Throughout this period, KJW attempted in vain to ask Defendant Jackson to introduce members of the KJW team to the Entity Defendants' staff. Defendant Jackson and Entity Defendants did not answer and no communication between other officers of the Plaintiffs and Defendants occurred.

48. Thereafter, Defendants demanded an additional capital investment of $500,000 from KJW, and represented that a failure to provide this additional capital would result in KJW's original $200,000 investment deemed accepted pursuant to the original terms of the non-binding term sheet and that any additional funds thereafter would only be accepted under terms never discussed or agreed to between the parties. Thus, Defendant's actions essentially amounted to a "take it or leave it" proposition to KJW, calculated to induce compliance through manufactured urgency.

49. Finally rebuffed by the lack of communication or any executed documents, Plaintiff KJW, in an email sent November 7, 2024, informed Defendants that KJW would not be committing to the remaining balance of projected 2025 capital as per the updated summary of terms sent April 12, 2024, and requested the return of the deployed capital of $200,000. Defendants did not answer. Plaintiffs asked for confirmation of receipt on November 11, 2024, to which Defendant Jackson finally responded.

50. Defendant Jackson responded on November 11, 2024:

> "Unfortunately due to the prior commitment of the $3,000,000 and the multiple assurances that KJW Capital would fulfill that commitment on multiple times.[sic] Those funds have already been invested.

10

> The lack of completing the committed amount also has cause [sic] a very detrimental delay in the company.
>
> So the terms set forth, [sic] on the call would have to proceed. The money has already been invested."

51. Plaintiff KJW immediately replied that:

   a. KJW did not receive nor agree to standard terms that "stated capital not attributed to the initial amount would be rolled over into a non-revenue producing venture (we were made to believe, acted on good faith that the Femi Secrets App was part of the main business, not a separate standalone company)".

   b. That no LPA agreements had yet been signed;

   c. No update had been provided "as to where / how our investment was deployed because you refused transparency";

   d. Reminded Defendants that as a holder of Preferred Stock KJW would have access to preferential financial information about the company; and that

   e. One of the other investors identified in the capitalization table provided as Exhibit A to the non-binding term sheet did not invest the amount indicated on the documents provided.

52. In an email of November 11, 2024, Defendant Jackson replied to Mr. Welcome of KJW. In response to KJW's concerns about the diversion of their deployed capital to a non-revenue producing venture, outside of what had been held out and promised in the marketing deck, Defendant Jackson stated:

> There was no scenario mentioned that the stated capital would not be closed, so again, you assured me on multiple occasions that the full commitment would be closed. So there was no need to discuss this. There are investors in the app alone and investors in the app and brand. Any one under the $250,000 mark would only invest in

11

the app. We did not know that this would be the case with KJW. So there was no need to discuss it until it was made clear to us that the committed amount of $3,000,000, would be at fault. Which we then discussed it immediately.

53. With regard to KJW's concerns about the lack of documentation for its investment, Defendant Jackson replied in that same email:

> Second, with what you stated here, this means the $200,000 would be a gift, not investment. Because you are not investors. Yet, you are asking me for information on the company and you are not investors.

54. With regard to KJW's statement that it had recourse to preferential financial documentation, Defendant Jackson replied in that same email:

> Refer to the statement above, because you have not closed the round or became investors, this is why this has not happened.

55. With regard to KJW's concerns that the capitalization table was a misrepresentation of the financial status of Entity Defendants, Defendant Jackson replied in that same email:

> Not sure what you mean here but 43 North has nothing to do with KJW Capital.

56. Finally, Defendant Jackson in that same email included acknowledgement that she had in fact diverted KJW's funds to the app project only in response to KJW's suggestion that the parties discuss the situation with their legal counsel:

> Yes, this seems to be the plausible next step; however, my goal is to make sure that no party is at risk. Technically, via Legal Counsel we could hold KJW responsible for the entire $3 Million commitment. Because of the lag in the committed amount, this stopped the Femi Secrets app from launching this year.
> Had the app launch on time, we could have made an additional $20 million dollars this year. The political and economic climate has changed as well due to this lag. So I understand you may be frustrated by the outcome but please understand the position this has put the company in, and our frustration as well.
>
> So if you would like to discuss this further after taking a couple of days to figure out how we can best move forward, I am willing to do that without a problem.

> If you seek to have your legal team contact me and we start that process, you have all my contact information. But my goal is to amicably resolve this and the terms that I stated previously, would give options to get the $200,000 back with profit.

57. In this email, Defendant Jackson, by threatening to hold KJW liable for the "entire $3 Million commitment," affirmatively acknowledges that KJW was an investor, and implicitly confirms KJW's right to review financial documentation as a shareholder of the entity.

58. After KJW reiterated its concerns, Defendant Jackson, in a November 12, 2024 email, indicated that "The documents says Femi Secrets Health which is the app. Which I updated you and your team on."

59. However, the only signed document, the non-binding term sheet, identifies "Femi Secrets, a corporation incorporated under the laws of Delaware"; elsewhere, the marketing deck nowhere states that the investment would only support the creation of an app, but rather trumpets the revenue, growth, and market value of the company as a whole.

60. The securities sold by Defendants in exchange for Plaintiff's investment of $200,000 are not registered with the Securities and Exchange Commission and no exemption from registration applies.

61. On or about January 16, 2025, Plaintiff, through counsel, sent Defendant Jackson a demand letter that included a request for information and records including, but not limited to, financial statements of relevant entities, a schedule of members and shareholders and their contact information, and formation documents, in addition to clarity and documentation about where Plaintiff's $200,000 investment was diverted.

62. As of the date of filing, Plaintiff has received no such records in response to the January 16, 2025, request.

63.     As of the date of filing, Plaintiff has not received any income from its investment in the Project. Furthermore, Plaintiff has not received its investment back from Defendants.

## V.
## FIRST CLAIM FOR RELIEF
**Fraud in Connection with the Purchase or Sale of Securities**
*Section 10(b) of the Exchange Act and Rule 10b-5 thereunder*

64.     Plaintiff incorporates the allegations in paragraphs 1 through 63 as if fully set forth herein.

65.     Defendants repeatedly misrepresented numerous critical and material facts about the Entity Defendants, namely but not limited to:

   a. The use of any funds invested by Plaintiff;

   b. The formation, composition, and status of the Entity Defendants;

   c. The financial documentation Plaintiff would have preferential access to; and

   d. The Entity Defendants' capitalization table(s).

66.     By repeatedly making these material misrepresentations, directly and indirectly, to Plaintiff, Defendants directly and indirectly, by the use of the means and instrumentalities of interstate commerce, or of the mail, in connection with the purchase or sales of securities:

   a)  Have employed devices, schemes, or artifices to defraud;

   b)  Have made untrue statements of material fact, or have omitted, are omitting and are about to omit to state material facts necessary in order to make the statements made, in light of the circumstances with which they were made, not misleading; and

   c)  Have engaged in transactions, acts, practices and courses of business which operated as a fraud upon purchasers of securities.

67. Furthermore, Plaintiff reasonably relied on these misrepresentations and Defendants induced the transaction through these misrepresentations.

68. Upon information and belief, Defendants knew their misrepresentations were fraudulent when made to KJW because they provided the marketing deck and term sheet to induce KJW's investment while only later attempting to recategorize the investment as a "gift" and diverting it to a non-revenue-producing purpose of app development.

69. By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

70. As a result of Defendants' violation of Section 10(b) of the Exchange Act, Plaintiff has been damaged at least two hundred thousand dollars ($200,000), plus interest, the full amount of which is to be proven at trial, all proximately caused by Defendants' acts and omissions and violations of law as described above and herein.

## VI.
## SECOND CLAIM FOR RELIEF
**Fraud in Connection with the Purchase or Sale of Securities**
**Section 12(a)(2) of the Exchange Act, codified at 15 U.S.C. § 77l(a)(2)**

71. Plaintiff incorporates the allegations in paragraphs 1 through 63 as if fully set forth herein.

72. This cause of action arises under Section 12(a)(2) of The Securities Act of 1933, codified at 15 U.S.C. § 77l. Section 12(a)(2) makes any person liable who offers or sells a security by means of a prospectus or oral communication that includes a material misrepresentation or material omission.

73. Defendants' promises regarding, but not limited to, the use of any funds invested by Plaintiff; the formation, composition, and status of the Entity Defendants; the financial documentation Plaintiff would have preferential access to; and the Entity Defendants'

capitalization table(s) were material to Plaintiff's investment decision and, in light of the circumstances, the unqualified inducements were fraudulent.

74. Upon information and belief, the fraudulent nature of these material misrepresentations were instrumental to the scheme to take Plaintiff's money, because Defendant knew or should have known that Plaintiff would not have made the investment but for these misrepresentations.

75. By repeating these promises associated with the securities in emails and emailed materials to Plaintiff, the veracity of which Plaintiff did not know at the time of the sale, Defendants have violated Section 12(a)(2) of the Securities Act.

76. As a result of Defendants' violation of Section 12(a)(2) of the Securities Act, Plaintiff has been proximately damaged at least in excess of two hundred thousand dollars ($200,000), plus interest, the full amount of which to be proven at trial, all proximately caused by Defendants' acts and omissions and violations of law as described above and herein.

## VII.
## THIRD CLAIM FOR RELIEF
### Fraudulent Inducement under Louisiana Common Law

77. Plaintiff incorporates the allegations in paragraphs 1 through 63 as if fully set forth herein.

78. The District Court has jurisdiction of this Count under the doctrine of supplemental jurisdiction, in that the claim of fraudulent inducement arises out of the same transaction as the First and Second Claims for Relief, above.

79. Defendants knew at the time they made the false representations and concealed the material facts as alleged above that such representations were untrue and that they were concealing material facts from Plaintiff. Defendants acted with the intention to deceive and mislead Plaintiff,

to fraudulently induce Plaintiff to invest in the Entity Defendants, and to fraudulently misappropriate and obtain control over the funds representing the Plaintiff's investment to make use of such funds and assets in conducting the business of Defendants, and/or in meeting the debts and liabilities of the Defendants, especially with regard to its non-revenue-producing app development.

80. In furtherance of their fraudulent scheme, Defendants did not intend to produce timely those documents which they had an obligation to produce:

a. Defendant FSH did not produce books and records upon a valid request for the same by Plaintiff, in violation of 8 Del. C. § 220 of Delaware General Corporation Law; and

b. Defendant FSH did not produce books and records upon a valid request for the same by Plaintiff, in violation of O.C.G.A. § 14-11-313, governing Georgia limited liability companies.

81. Plaintiff relied upon these misrepresentations as alleged above in deciding to invest in the Entity Defendants and proffer its capital.

82. As a direct and proximate result of Defendants' actions as described above, and because of KJW's reliance on the Defendants' misrepresentations as alleged, Plaintiff has been damaged at least in excess of two hundred thousand dollars ($200,000), plus interest, the full amount of which to be proven at trial.

## VIII.
## FOURTH CLAIM FOR RELIEF
### Violation of Section 12(a)(1) of the Securities Act

83. Plaintiff incorporates the allegations in paragraphs 1 through 63 as if fully set forth herein.

84. Defendants' conduct amounted to the unregistered offer and sale of securities in interstate commerce in violation of Section 12(a) the Securities Act of 1933.

85. No registration statement was in effect or filed in relation to the security.

86. Defendant sold a security.

87. The offer or sale took place in interstate commerce.

88. As a direct and proximate result of Defendants' conduct and actions as described above, Plaintiff has been damaged at least in excess of two hundred thousand dollars ($200,000), plus interest, the full amount of which to be proven at trial.

## IX.
## FIFTH CLAIM FOR RELIEF
**Control Person Liability under section 20(a) of the Exchange Act and Section 15 of the Securities Act**

89. Plaintiff incorporates the allegations in paragraphs 1 through 63 as if fully set forth herein.

90. Defendant Jackson directly or indirectly controlled Defendant FS and Defendant FSH, and their agents, in the sale of unregistered securities for the purpose of executing a scheme to defraud KJW, an out-of-state investor, through said sale.

91. The criminal enterprise advanced by Defendants to defraud investors through the sale of unregistered securities was in contravention of the rules and regulations of the Securities and Exchange Commission and designed to protect the investing public.

92. All Defendants are jointly and severally liable for the damages caused by Defendant FS and Defendant FSH through its fraudulent and/or unregistered, and non-exempted from registration, sales of securities in interstate.

93. As a direct and proximate result of Defendants' conduct and actions as described above, Plaintiff has been damaged at least in excess of two hundred thousand dollars ($200,000), plus interest, the full amount of which to be proven at trial.

## X.

## **DEMAND FOR JURY TRIAL**

94. Plaintiff hereby demands a trial by jury on all contested issues of fact set forth herein.

## XI.
## **RELIEF REQUESTED**

WHEREFORE, the premises considered, Plaintiff KJW Capital, LLC prays that this Complaint be deemed good and sufficient and that, after all delays and proceedings are had, there be judgment in its favor:

1. Awarding Plaintiff compensatory damages at least in the amount of two hundred thousand dollars ($200,000) plus interest, the total sum to be proven at trial;

2. Awarding Plaintiff its costs, together with reasonable attorney's fees; and

3. Awarding Plaintiff such other relief as the Court may deem proper, just, and appropriate.

Respectfully submitted,

**DAVILLIER LAW GROUP, LLC**

/s/Jonathan D. Lewis
Daniel E. Davillier, La. No. 23022
Charles F. Zimmer II, La. No. 26759
Jonathan D. Lewis, La. No. 37207
Allen Shoff, ID No. 9289 (*pro hac pending*)
935 Gravier Street, Suite 1702
New Orleans, LA 70112
Telephone: (504) 582-6998
ddavillier@davillierlawgroup.com
czimmer@davillierlawgroup.com
jlewis@davillierlawgroup.com
ashoff@davillierlawgroup.com
***Counsel for KJW Capital, LLC***